IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

JAMES R. MUNSON, JR.                                                                                              PETITIONER
ADC #112106

V.                                          NO. 5:04CV00443 JMM/JWC

LARRY NORRIS, Director,                                                                                       RESPONDENT
Arkansas Department of Correction

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

## INSTRUCTIONS

The following recommended disposition has been sent to United States District Court Judge James M. Moody.  Any party may serve and file written objections to this recommendation.  Objections should be specific and should include the factual or legal basis for the objection.  If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection.  An original and two copies of your objections must be received in the office of the United States District Court Clerk no later than eleven (11) days from the date of the findings and recommendations.  The copy will be furnished to the opposing party.   Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the District Judge, you must, at the same time that you file your written objections, include the following:

1. Why the record made before the Magistrate Judge is inadequate.

2. Why the evidence proffered at the hearing before the District Judge  (if such a  hearing is granted)  was not  offered at  the hearing before the Magistrate Judge.

3. The detail of any testimony desired to be introduced at the hearing before the District Judge in the form of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the hearing before the District Judge.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

Clerk, United States District Court
Eastern District of Arkansas
600 West Capitol Avenue, Suite 402
Little Rock, AR 72201-3325

## **RECOMMENDED DISPOSITION**

James R. Munson, Jr., an Arkansas Department of Correction (ADC) inmate, brings this petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (docket entry #2), alleging that he is wrongfully being denied parole due to a pre-release requirement that he complete a sex offender treatment program. Respondent filed a response (docket entry #5). Petitioner has filed several other pleadings and exhibits in support of his claims (docket entries #3, #6, #7, #8, #9, #10, #11, #12), all of which have been reviewed. For the reasons that follow, this petition should be **dismissed in its entirety with prejudice**.

I.

Following a jury trial in August 1996 in the Circuit Court of Faulkner County, Arkansas, Petitioner was convicted of first degree violation of a minor and was sentenced as an habitual offender to 180 months of imprisonment. (Resp't Ex. A.)[1] His conviction

---

[1] Respondent's exhibits are attached to docket entry #5.

was affirmed in a direct appeal. Munson v. State, 959 S.W.2d 391 (Ark. 1998) (Resp't Ex. B).

According to Petitioner's exhibits,[2] the Arkansas Post-Prison Transfer Board ("Board") approved him for parole in 2000, but conditioned his release on completion of the ADC's Reduction of Sexual Victimization Program (RSVP). He was placed in the program at least twice, but did not complete it. (See Pet'r Ex. I, ¶¶ 5-8.) On March 13, 2003, Petitioner appeared before the Board, which deferred a decision for three months to obtain "more information." (Pet'r Ex. 9.) Following a hearing on June 12, 2003, the Board deferred a decision for four more months for a "sexual offenders evaluation." (Pet'r Ex. 10.) On July 10, 2003, Dr. Guen Wright, the RSVP clinical director, informed the Board that Petitioner had been sent an "admission packet," which included a "Psychosexual Life History Inventory." Dr. Wright said she hoped that, upon reviewing Petitioner's answers, an evaluation could be provided. (Pet'r Ex. 11.) A handwritten, unsigned note, dated October 14, 2003, states that Petitioner had been "kicked out of RSVP" because he was spreading rumors about Dr. Wright, which "undermined the effective[ness] of staff." (Pet'r Ex. 12.) Petitioner appeared before the Board on October 16, 2003, and the Board, "[a]fter due deliberation," ordered that he would be "Transfer[red] to DCC[3] Supervision" and "Rel[eased] on Compl[etion] of RSVP." (Pet'r Ex. 1.) In a memo dated October 8, 2004, ADC Deputy Director Max Mobley advised Petitioner that policy permitted inmates to

---

[2]Unless otherwise indicated, Petitioner's exhibits are attached to docket entries #2 (Pet'r Ex. A-K) and #11 (Pet'r Ex. 1-17).

[3]DCC (Department of Community Correction) is "the administrative structure in place to oversee the development and operation of community correction facilities, programs, and services, including probation and parole supervision." Ark. Code Ann. § 16-93-1202(d) (2005 Supp.)

reapply for RSVP after six months and told him to contact RSVP for the necessary papers if he did not already have them. Mr. Mobley also advised Petitioner that questions about any Board stipulations needed to be addressed to the Board. (Pet'r Ex. 14.)

It is undisputed that Petitioner has not completed the RSVP program and remains incarcerated. According to Petitioner, he has been denied reinstatement to the RSVP program and the Board has denied his numerous requests to have the RSVP condition removed as a pre-release requirement, thereby preventing his release on parole. He also says he has attempted to raise the issue through the ADC grievance system and in the state courts, with no success.

In this action, Petitioner challenges the Board's actions on several bases.[4] First, he claims that, in requiring him to complete the RSVP program as a condition to release on parole, the Board acted with bias and in retaliation for a 42 U.S.C. § 1983 lawsuit he filed in 2002 about the "unfunctional" RSVP program. Second, he says the Board abused its discretion in requiring him to complete the RSVP program when it has released other sex offenders without requiring them to complete the program or by allowing them to complete a "street program" instead. He also says he does not meet the statutory or psychiatric "diagnostic criteria" for being required to complete a sex offender program. Third, he says the Board violated policy, procedure and his due process rights by not allowing him to see statements made to the Board by individuals ("judge, sheriff, prosecutor, victim, and others"), denying his numerous requests for a hearing, and failing to "consider the facts presented." Fourth, he argues that the Board's decision to deny him parole did not meet

---

[4]Petitioner's claims and supporting facts and arguments overlap, but the Court has attempted to set forth the claims essentially as alleged in the initial petition (docket entry #2).

established criteria, ignored "the facts," and was arbitrary and capricious. He says the Board made its decision without having him evaluated and that the trial court did not classify him as a sex offender or require him to complete the sex offender program or any treatment. He also says a Board member was "very rude," and immediately stopped his hearing and denied him access to certain records after he complained about the Board's actions. As relief, he seeks to have the RSVP stipulation removed, or to be afforded an alternative street program.

II.

A federal court may issue a writ of habeas corpus only for a violation of the Constitution, laws or treaties of the United States. 28 U.S.C. §§ 2241(c), 2254(a). There is no federal constitutional interest in having state officers follow state law or prison officials follow prison regulations. Phillips v. Norris, 320 F.3d 844, 847 (8th Cir. 2003). Therefore, regardless of whether any state laws or parole board or ADC policies have been violated, this Court is limited to determining whether a federal violation has occurred.

The Fourteenth Amendment to the Constitution provides in part that no state shall "deprive any person of life, liberty, or property without due process of law." U.S. Const. amend. XIV, § 1. Protected liberty interests may arise from the Due Process Clause itself or from state laws. Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 460 (1989). The United States Supreme Court has held that a convicted person has no federal constitutional or inherent right to be conditionally released before the expiration of a valid sentence. Greenholtz v. Inmates of Nebraska Penal & Corr. Complex, 442 U.S. 1, 7 (1979). The mere possibility of parole, without more, provides no more than a hope that

the benefit will be obtained and does not create an entitlement to due process under the Fourteenth Amendment. Id. at 11; see Adams v. Agniel, 405 F.3d 643, 645 (8th Cir. 2005) (inmate has no constitutionally protected liberty interest in the possibility of parole).

In establishing a parole system, a state may, nevertheless, create a liberty interest that is protectible under the Fourteenth Amendment. Greenholtz, 442 U.S. at 12; see Board of Pardons v. Allen, 482 U.S. 369, 373-81 (1987). However, nothing in the Arkansas parole statutes creates anything more than a mere possibility of parole, and thus the statutes do not establish any right to release on parole which would invoke due process protection. Pittman v. Gaines, 905 F.2d 199, 201 (8th Cir. 1990); Parker v. Corrothers, 750 F.2d 653, 655-57 (8th Cir. 1984); Robinson v. Mabry, 476 F. Supp. 1022, 1023 (E.D. Ark. 1979); see Allen, 482 U.S. at 378 n.10.

Instead, the statutes place minimal limitations on the Board's discretion and provide that the Board "may" grant parole when, in its opinion, there is a reasonable probability that a prisoner can be released without detriment to the community or himself. Ark. Code Ann. § 16-93-701(a)(1). The statutes also clearly provide for discretion on the part of the Board in setting conditions for parole and in determining if or when a particular inmate will be paroled or transferred from the ADC to DCC supervision. Id. §§ 16-93-206(a)(1), (e)(1) & (f), 16-93-1208(a), 16-93-1302. The statutes regarding transfer eligibility expressly state that "[n]othing in this subchapter shall grant any offender the right to be sentenced or transferred under these provisions as a matter of right." Id. § 16-93-1210.

The Arkansas Supreme Court has emphasized the broad discretionary authority granted to the Board under the state's parole statutes. Michalek v. Lockhart, 730 S.W.2d 210, 211 (Ark. 1987); see Dougan v. Ford, No. 04-623, 2005 WL 2387576, *2 (Ark. Sup.

Ct. Sept. 29, 2005) ("If the conditions [set by the Board] are too onerous, appellant could decline to accept the conditions set, and elect to serve out his sentence instead."); Hodges v. Norris, No. 02-786, 2004 WL 439982, *2 (Ark. Sup. Ct. Mar. 11, 2004) (unpub. op.) (citing § 16-93-1210 and stating, "Transfer for parole is not a matter of right."); Ensey v. Norris, No. 99-752, 2001 WL 469154, *2 (Ark. Sup. Ct. May 3, 2001) (same); Maxie v. Gaines, No. 94-313, 1994 WL 571967, *1 (Ark. Sup. Ct. Oct. 10, 1994) ("the statute which provides in pertinent part that the parole board may release an eligible prisoner under certain conditions ... does not create a liberty interest in parole; that is, the board's determinations regarding parole are discretionary").

In two unpublished opinions, the Arkansas Supreme Court has rejected inmates' claims regarding imposition of the RSVP program as a prerequisite to parole eligibility. In Hodges, supra, an inmate claimed he was improperly removed from RSVP, which resulted in a denial of parole. The state supreme court held that the RSVP condition for parole was "well within the Board's discretionary power." In Ensey, supra, the inmate sought removal of the RSVP requirement from the Board's conditions for transfer to community punishment and release on parole. The state supreme court again held that the Board's action was "well within its duties and discretionary power."

When a prisoner is committed to the custody of a state penal authority, such as the ADC, "he can be assured of only one thing – that he will be released from the State's custody at the end of the term of years specified by the sentencing court." Richmond v. Duke, 909 F. Supp. 626, 631 (E.D. Ark. 1995). Petitioner has no federal or state liberty interest in the possibility of obtaining parole, and he is thus not entitled to any due process

protections in connection with his parole proceedings or the particular conditions imposed by the Board in its discretion.

Furthermore, Petitioner does not have a liberty interest in participating in the RSVP program independent of any right to parole.  See Jones v. Moore, 996 F.2d 943, 945-46 (8th Cir. 1993).  A state-created liberty interest only arises in a situation where the state has placed substantive limitations on the exercise of official discretion.  Id. at 945.  Petitioner has identified no statute, ADC or Board policy providing guidelines or containing any mandatory language expressly requiring the ADC to apply certain substantive predicates in determining whether an inmate is allowed to participate in RSVP.

He does refer repeatedly to Ark. Code Ann. § 12-29-406, which provides as follows:

>    (a)    The purpose of this section is to enable the Department of Correction to establish a core program which will utilize services of medical and mental health providers in the community to provide intensive treatment of inmates with paraphilia, commonly known as sexual deviations, during their incarceration to increase their chance of returning to society successfully upon their release.
>
>    (b)(1)  The Mental Health Services Section of the Division of Health Treatment Services of the Department of Correction is authorized to establish and maintain a program for intensive treatment for control of deviant sexual behavior of inmates in a specialized treatment setting and to cooperate with the medical services provider in screening for sexually transmitted diseases as part of this program.
>
>    (2)    The department may develop the program in such a manner as to utilize outside professionals from the medical and mental health fields to provide both teaching and training opportunities.
>
>    (3)    The section shall adopt, promulgate, and enforce such rules, regulations, policies, and standards as may be necessary to carry out the intent and purposes of this section.

Contrary to Petitioner's belief, nothing in this statute mandates that an inmate meet the clinical definition of "paraphilia" before being placed in the ADC's sexual offender

treatment program. It merely authorizes the ADC, in subsection (a), to establish a program for treating inmates with this disorder and, in subsection (b), to establish and maintain a program for treating inmates who exhibit "deviant sexual behavior." Petitioner was convicted of violating his fourteen-year-old sister-in-law, when she was visiting in his home, by inserting his finger and tongue into her vagina. Munson, 959 S.W.2d at 394; see also Pet'r Ex. 4. It is certainly within the discretion of the ADC and the Board to determine that this type of behavior justifies placement in a sexual offender treatment program or imposition of a requirement that Petitioner complete a sexual offender treatment program before being released into the community. See Ark. Code Ann. § 5-14-101(1) (defining "deviate sexual activity" as "any act of sexual gratification involving ... [t]he penetration, however, slight of the labia majora or anus of one person by any body member or foreign instrument manipulated by another person").

Therefore, Petitioner has no federal or state liberty interest in participating in the RSVP program and is not entitled to any due process protections in connection with his participation in – or removal from – the program. See Jones, 996 F.3d at 945-46.

Petitioner also alleges that, by imposing the RSVP pre-release condition, the Board is retaliating against him for a 42 U.S.C. § 1983 civil rights lawsuit he filed in 2002 against Board members, Munson v. Norris, E.D. Ark. No. 5:02cv00364. In that lawsuit, Petitioner also challenged RSVP completion as a parole prerequisite, he was unsuccessful in the District Court, and his appeal is still pending before the Eighth Circuit Court of Appeals.[5]

---

[5] In the 2002 case, Petitioner's complaint alleged that imposition of the RSVP pre-release condition violated his rights under the Fourteenth Amendment (for failing to afford him due process and for removing him due to his interracial marriage), the Fifth Amendment (because he was required to acknowledge guilt) and the First Amendment (because of required participation in some religious aspects of the program). The District Court dismissed the case as frivolous. Munson v. Norris, No. 5:02cv00364 (E.D. Ark. Nov. 5, 2002).

Here, Petitioner acknowledges that the RSVP condition was imposed when he was approved for parole in 2000. (Pet'r Ex. C, p.1.) According to his own exhibits, before he ever filed the 2002 lawsuit, he had been placed in the program twice, removed from the program twice, and had submitted at least three requests for reconsideration, which were denied. (Pet'r Ex. I.) The 2002 lawsuit and this lawsuit are both challenging the same RSVP parole condition imposed in 2000. In fact, this is the third lawsuit he has filed about the RSVP program. In the first one, he alleged that he had been told, *in 1998*, that he would not be eligible for parole until he completed the RSVP program. Munson v. Gruthary, et al., No. 5:99cv00222 (E.D. Ark. Sept. 29, 1999) (dismissing as frivolous).[6] Where Petitioner has been complaining since 1998 about RSVP completion as a parole prerequisite, he has simply failed to demonstrate that the more recent denials of reconsideration were in retaliation for the 2002 lawsuit. Moreover, he should not be permitted to repeatedly allege new angles for challenging the RSVP parole condition when this Court has ruled that no federal issue exists and the Eighth Circuit still has related issues before it.[7]

---

On appeal, the Eighth Circuit affirmed dismissal of the due process claims, but reversed and remanded for consideration of Petitioner's other claims under the Fifth, First and Fourteenth Amendments. Munson v. Norris, 67 Fed. Appx. 383 (8th Cir. June 27, 2003). After a hearing, the District Court dismissed the remaining claims as without merit on October 28, 2004. See docket entries #94-97 in E.D. Ark. No. 5:02cv00364. Petitioner's appeal of that decision is still pending before the Eighth Circuit as Case No. 04-3938.

[6] He alleged that the RSVP requirement violated his rights under the United States and Arkansas Constitutions because he was being forced to admit guilt and because it was a second punishment for the charge for which the jury had found him guilty, subjecting him to double jeopardy. E.D. Ark. No. 5:99cv222, docket entry #2.

[7] In his objections to the Magistrate Judge's recommended dismissal in the 2002 case, Petitioner raised many of the same allegations he raises here. E.D. Ark. No. 5:02cv364, docket entry #95. The District Judge adopted the recommendations after reviewing those objections. Id. at docket entry #96. This decision is on appeal to the Eighth Circuit.

Under these circumstances, this 28 U.S.C. § 2254 petition for writ of habeas corpus (docket entry #2) should be **dismissed in its entirety, with prejudice**.  In light of this recommendation, Petitioner's motion for partial summary judgment (docket entry #9) should be **denied**.

DATED this 1st day of December, 2005.

_____
UNITED STATES MAGISTRATE JUDGE